UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20772-CIV-DIMITROULEAS/ROSENBAUM

ARLIN VALDEZ-CASTILLO,

       Plaintiff,

v.

BUSCH ENTERTAINMENT CORPORATION,
d/b/a BUSCH GARDENS TAMPA BAY,
BOYKIN MIAMI HOTEL, L.P., BOYKIN
MANAGEMENT COMPANY, LLC, and
CONSERVATION AMBASSADORS, INC.,
f/k/a ZOO TO YOU WILDLIFE EDUCATION,
INC., f/k/a WILDLIFE ON WHEELS, INC.,

       Defendants.
_____/

## ORDER

This matter is before the Court on Defendant Busch Entertainment Corporation's Motion for Sanctions. [D.E. 131]. The Court has fully reviewed Defendant Busch Entertainment Corporation's Motion for Sanctions, Defendant Conservation Ambassadors, Inc.'s Joinder in Busch Entertainment Corporation's Motion for Sanctions [D.E. 133], Plaintiff's Response to Defendant Busch Entertainment Corporation's Motion for Sanctions [D.E. 134] Defendant Busch Entertainment Corporation's Reply to Response to Motion for Sanctions [D.E. 137], and the file in this case, has held a hearing on November 17, 2008, on Defendant Busch Entertainment Corporation's Motion for Sanctions, and is otherwise fully advised in the premises. For the reasons described below, the Motion is denied.

## BACKGROUND

This case arises out of injuries allegedly sustained by Plaintiff Arlin Valdez-Castillo while employed as a housekeeper at a Hampton Inn in Miami, Florida, which was owned, operated, and maintained by Defendant Boykin Miami Hotel, L.P., and Boykin Management Company, LLC (collectively, "Boykin"). According to the First Amended Complaint [D.E. 26], in February, 2004, agents of Defendant Busch Entertainment Corporation ("Busch") and Defendant Conservation Ambassadors, Inc., known at that time as Wildlife on Wheels, Inc. ("WOW"), stayed overnight for several consecutive days as guests of the Hampton Inn in question. D.E. 26 at ¶9. During their visit, the Busch and WOW agents allegedly kept monkeys, reptiles, and birds with them in their hotel rooms. *Id.* at ¶10.

As a housekeeper at the Hampton Inn, Plaintiff cleaned the rooms in which the Busch and WOW agents kept the animals. D.E. 26 at ¶13. Plaintiff alleges that during the course of preparing the rooms, she was exposed to "the zoo animals and/or their dander, urine, feces, excrement and odor." *Id.* at ¶14. Subsequently, Plaintiff developed physical and emotional problems, which she attributes to her exposure to the Busch and WOW animals. *Id.* at ¶15.

Plaintiff then made a claim for worker's compensation benefits against Boykin, but the claim was denied in its entirety. D.E. 26 at ¶17. Shortly after Plaintiff advised Boykin that she had suffered injury from her exposure to the animals for which she was claiming worker's compensation benefits, Plaintiff claims, Boykin forced her to resign or fired her. *Id.* at ¶18. This lawsuit followed.

Plaintiff originally filed her Complaint in this matter in state court, but Defendants removed the case to federal court on March 29, 2006. *See* D.E. 1. During the course of discovery in this matter, pursuant to the parties' request, the Court entered an Agreed Protective Order Regarding

Production of Confidential, Proprietary and Trade Secret Information to Plaintiff ("Protective Order") on July 19, 2008. [D.E. 31]. Under the terms of the Protective Order, trade secrets and certain other types of information may be designated as "Confidential" by Busch, may be used only for purposes of this action, and may not be disclosed to any person except in accordance with the terms of the Protective Order. *Id.* Additionally, the Protective Order provides that any documents designated as "Confidential" may be filed by the parties with the Court only under seal. *Id.*

On May 19, 2008, after Plaintiff had ended her employment of her attorney who filed this case, Michael M. Tobin, Esq., filed a Limited Notice of Appearance and Motion for an Extension of Time to Amend Plaintiff's Response to Motion for Summary Judgment. [D.E. 122]. In this Notice, Mr. Tobin made a limited appearance as counsel for Plaintiff "only until such time . . . as John P. Hess, Esq., has the opportunity to fulfill all requirements to be admitted to practice in the Southern District of Florida. John P. Hess, Esq., will succeed Michael Tobin, Esq., as counsel of record at that time." *Id.* On November 4, 2008, Mr. Hess filed his Notice of Appearance for Plaintiff in this matter. [D.E. 146].

In the meantime, Defendant Busch filed its Motion for Sanctions. [D.E. 131]. In its Motion, Defendant Busch alleges that Plaintiff had provided Busch's Animal Appearance and Travel Protocol Guidelines and Information ("Travel Protocol"), a confidential document purported to contain trade secrets and covered by the Protective Order, to *The Miami Herald*. *Id.* at 1-2. *The Herald* then published information contained within the Travel Protocol, including a brief excerpts, in a front-page article on September 24, 2008.[1] *Id.* at 1. Because Plaintiff violated the Protective

---

[1] The Travel Protocol is a 24-page, primarily single-spaced 8 ½-inch by 11-inch document. *The Miami Herald* article focuses on the allegations in the pending case but contains a shadow box with five short sentences excerpted from the Travel Protocol.

Order, and further, because Defendant Busch alleges that Plaintiff attempted to taint the jury pool by her disclosures to the media, Defendant Busch urges the Court to dismiss Plaintiff's case with prejudice, award Defendant Busch its attorney's fees and costs associated with the Motion for Sanctions, direct Plaintiff to retrieve all copies of Busch's confidential documents from the media, order Plaintiff to provide Busch with a list of every entity or person to whom any confidential documents have been disclosed, and prohibit Plaintiff and her counsel from making any comments to the media about this case. *Id.* at 8.

In response, Mr. Hess admitted in Plaintiff's Response to Defendant Busch Entertainment Corporation's Motion for Sanctions [D.E. 134] that he had provided the Travel Protocol to *The Miami Herald*, but he offered that at the time he did so, he did not realize that the Travel Protocol was subject to the Protective Order. Rather, Mr. Hess explained that when he entered the case on May 19, 2008, he took custody of nine file boxes of papers in this case. *Id.* at 1. Although he reviewed the Protective Order, Mr. Hess noted that the version of the Travel Protocol he provided to *The Miami Herald* did not have the word "Confidential" stamped upon it. Consequently, Mr. Hess stated, he did not realize that the Travel Protocol was subject to the Protective Order when he provided it to *The Miami Herald*. Further suggesting that the Travel Protocol was wrongly covered by the Travel Protocol, Mr. Hess attached a copy of the document to Plaintiff's Response in support of his claim in this regard.

On October 6, 2008, after receiving Plaintiff's Response, Defendant Busch filed its Unopposed Motion to Remove Confidential Document from the Court File [D.E. 132], which sought to have the Travel Protocol that was attached to Plaintiff's Response excised from the public record

because of its status as a "Confidential" document under the Protective Order.[2]  The Court granted the Unopposed Motion on October 8, 2008.  [D.E. 135].

Defendant Busch then filed its Reply to Plaintiff's Response to Motion for Sanctions.  [D.E. 137].  In its Reply, Defendant Busch argued that Plaintiff's attachment of the Travel Protocol to her Response demonstrated additional bad faith and further warranted dismissal with prejudice of Plaintiff's case.

On November 17, 2008, the Court held a hearing on Defendant Busch's Motion.  During the hearing, Mr. Hess, a recently admitted member of the Bar, apologized and candidly admitted that he should not have disclosed the Travel Protocol, but repeated that he did not realize that the Travel Protocol was subject to the Protective Order, as the document he had was not stamped "Confidential."  As for why Mr. Hess attached a copy of the Travel Protocol to Plaintiff's Response, Mr. Hess explained that since the document had already been made public, it did not occur to him that he needed to file it under seal with the Court.  When asked whether any other disclosures of the Travel Protocol or any other documents subject to the Protective Order had been made, Mr. Hess answered that no other disclosures had occurred, and immediately upon learning from Defendant Busch of the "Confidential" status of the Travel Protocol, Mr. Hess contacted *The Miami Herald* journalist and retrieved the copy of the Travel Protocol he had provided to him.  Mr. Hess appeared at the hearing accompanied by Bryan J. Yarnell, Esq., a more experienced attorney who indicated that he had come onboard in this case approximately one week ago to assist Mr. Hess in his representation of Plaintiff.

---

[2] Defendant Conservation Ambassadors, Inc. (formerly known as and referred to in this Order as "Wildlife on Wheels, Inc.," or "WOW"), also filed its Joinder in Busch Entertainment Corporation's Motion for Sanctions on October 6, 2008.  [D.E. 133].

Plaintiff then opined that because Mr. Hess had immediately apologized and retrieved from *The Miami Herald* reporter the only copy of the Travel Protocol disbursed in violation of the Protective Order as soon as Defendant Busch pointed out the violation, it was not necessary for Defendant Busch to file its Motion for Sanctions, as Plaintiff had already completed all corrective action possible. Consequently, Plaintiff suggested, Defendant Busch should not receive its fees and costs incurred in filing what Plaintiff described as an "unnecessary" motion.

To the extent that the Court might consider imposing fees and costs associated with Defendant Busch's Motion and Defendant WOW's Joinder, Plaintiff argued that WOW effectively lacks standing to be eligible for an award of fees or costs because the Protective Order resulted from an agreement between Plaintiff and Defendant Busch to which Defendant WOW was not a party. Moreover, the specific harm sought to be prevented by the Protective Order related to release of Defendant Busch's trade secrets – an injury in which Defendant WOW possesses no cognizable interest.

Defendant Busch urged the Court to find that Mr. Hess disclosed the Travel Protocol in bad faith and to dismiss the case with prejudice. In support of this position, Defendant Busch noted that during the course of litigation in this case, Defendant WOW filed its Rule 26, Fed. R. Civ. P., initial disclosures with the Court. *See* D.E. 59. Among the documents publicly filed by WOW was the Travel Protocol. Upon realizing that the Travel Protocol was subject to the Protective Order, WOW filed a motion to remove the document (and others) from the public record. On October 3, 2006, the Court granted WOW's motion and specifically stated that the Clerk's Office would remove the Travel Protocol from the public file. D.E. 61. Additionally, the Court ordered all attorneys of record to mark the Travel Protocol "Confidential" and handle the document in accordance with the

requirements of the Protective Order. *Id.* Thus, Defendant Busch argued, Plaintiff's copy should have been marked "Confidential" by the terms of both the Protective Order and the subsequent Order of this Court dated October 3, 2006. Defendant Busch further again pointed to Plaintiff's attachment of the Travel Protocol to her Response to Defendant Busch's Motion for Sanctions as more evidence of Plaintiff's bad faith warranting the imposition of sanctions and specifically dismissal of the case.

Defendant WOW responded to Plaintiff's standing argument, noting that the Court entered the Protective Order in the case as a whole and that it was WOW's earlier disclosure violation that triggered the Court's October 3, 2006, Order binding all parties. Additionally, WOW argued that any jury pool taint that could have resulted from the disclosure in violation of the Protective Order will have a negative effect on WOW. The Court took the parties' arguments under advisement and now rules on the pending motions.

## *ANALYSIS*

Defendant Busch seeks dismissal of Plaintiff's case, as well as other remedies for Plaintiff's disclosure of the Travel Protocol in violation of the Protective Order, and asks the Court to accomplish this request through the use of its inherent powers. Courts have long been recognized as having certain implied powers that are "necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citing *United States v. Hudson*, 7 Cranch 32, 34 (1812) and *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) (citing *Hudson*). "These powers are 'governed not by rule of statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). A court's "inherent power extends to a full range of litigation abuses" and "must continue to exist to fill in the interstices." *Chambers,* 501 U.S. at 46.

Because of their "potent nature," however, "'inherent powers must be exercised with restraint and discretion.'" *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (quoting *Chambers*, 501 U.S. at 42-43). Moreover, they cannot be invoked at all in the absence of a finding of bad faith. *Id.* (citing *Chambers*, 501 U.S. at 49); *see also Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("The key to unlocking a court's inherent power requires a finding of bad faith.").

Here, the Court finds no bad faith. While it is true that Mr. Hess had an obligation as a member of the Bar and an officer of this Court to familiarize himself with the docket in this case and all prior orders of the Court, and to ensure his compliance with such orders, under the circumstances of this particular case, the Court cannot necessarily equate counsel's failure to comply with the Protective Order as it relates to the Travel Protocol with willful misconduct or an action undertaken in bad faith.

The Court notes that as of the time Mr. Hess overtook representation of Plaintiff in this case, the docket contained an Order specifically referring to the Travel Protocol as being covered by the Protective Order, and Mr. Hess had a responsibility to be aware of that fact. Moreover, both Florida Bar rules and the Local Rules of this Court require attorneys to ensure that any communications with the media regarding pending cases not jeopardize the parties' right to a fair trial.

Nevertheless, the case involves numerous documents, the version of the Travel Protocol contained within Plaintiff's copies of the documents was not marked "Confidential" when Mr. Hess received the case (although the same October 3, 2006, Order discussing the Travel Protocol specifically imposed upon prior counsel an obligation to mark it as such), and Mr. Hess is still a relatively new and inexperienced lawyer. Moreover, upon learning of his error, Mr. Hess immediately admitted it, retrieved the copy of the Travel Protocol from *The Miami Herald,* and

appeared genuinely contrite at the hearing. Mr. Hess has also apparently recognizes the seriousness of the issues raised by Defendant Busch's Motion for Sanctions, and he has since enlisted the assistance of a more experienced attorney to guide him. While Mr. Hess's failure to comply with this Court's Orders entered prior to Mr. Hess's appearance in this case cannot be overlooked or excused, upon review of the record and upon hearing from Mr. Hess in open court, I find that Mr. Hess's deficiency with respect to the production of the Travel Protocol was borne of inexperience, as opposed to a nefarious motivation. Where, as here, the Court finds no bad faith, the Court may not invoke its inherent powers to sanction Plaintiff or Mr. Hess.

The Court next considers whether Rule 37 provides a separate and independent source of authority for the Court consider sanctions for the failure of a party to comply with the terms of a protective order. Under Rule 37(b)(2)(A), "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders." In discussing this provision, the 1970 Advisory Committee Notes indicate,

> The scope of Rule 37(b)(2) is broadened by extending it to include any order "to provide or permit discovery," including orders issued under Rules 37(a) and 35. Various rules authorize orders for discovery – *e.g.*, Rule 35(b)(1), **Rule 26(c)**, as revised, Rule 37(d). . . . . Rule 37(b)(2) should provide comprehensively for enforcement of all these orders. . . .

Fed. R. Civ. P. 37(b)(2), 1970 Advisory Committee Notes (emphasis added). Several courts have held that Rule 37(b)(2) provides a mechanism for considering sanctions against a party that violates a protective order made under Rule 26(c). *See, e.g., Schiller v. City of New York*, 2007 WL 1623108, *3 (S.D.N.Y. June 5, 2007) (citing *Poliquin v. Garden Way, Inc.,* 154 F.R.D. 29, 31 (N.D. Me. 1994); *Westinghouse Electric Corp. v. Newman & Holtzinger, P.C.*, 992 F.2d 932, 934-35 (9th Cir. 1993); *Lewis v. Wal-Mart Stores, Inc.*, 2006 WL 1892583, *3 (N.D. Okla. July 10, 2006); *Frazier*

*v. Layne Christensen Co.*, 2005 WL 372253, *4 (W.D. Wis. Feb. 11, 2005); *American Nat'l Bank & Trust Co. Ex rel. Emerald Investments LP v. AZA Client Solutions, LLC*, 2002 WL 1067696, *5 (N.D. Ill. May 28, 2002)); *see also Whitehead v. Gateway Chevrolet*, 2004 WL 1459478, *3 (N.D. Ill. June 29, 2004); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983).

The Eleventh Circuit, however, has reached the opposite conclusion. In arriving at this determination, the Eleventh Circuit has reasoned,

> [T]he Notes refer to Rule 26(c) only in connection with rules authorizing "orders *for discovery*" (emphasis added). Under Rule 26(c), "[i]f the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or other person provide or permit discovery." This type of order clearly qualifies as an order "for discovery" under Rule 26(c). In contrast, a Rule 26(c) protective order is not "an order to provide or permit discovery," and therefore, such orders do not fall within the scope of Rule 37(b)(2). . . .

*Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1323 (11th Cir. 2001) (citing Rule 37(b)(2) and *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1098-99 (6th Cir. 1994) (Ryan, J. dissenting)). It may not be entirely obvious to some why Rule 26(c) protective orders do not enjoy the protections of Rule 37(b) while other discovery orders issued pursuant to Rule 26(c) do, since an agreed protective order may be viewed as allowing discovery to proceed, albeit without the need to litigate over the terms of the protective order first.[3] Regardless, however, Eleventh Circuit opinions are binding upon this Court and must be followed. Thus, although Mr. Hess's violation of the protective order was serious and, given the appropriate vehicle, probably warrants some type of sanction – despite this Court's finding that Mr. Hess did not engage in it in bad faith, Rule 37(b)(2)(C), which might otherwise

---

[3]Of course, parties should not therefore refrain from attempting to resolve discovery disputes relating to sensitive documents without court intervention.

require the imposition on Mr. Hess of attorney's fees and costs incurred by Defendant Busch in filing its Motion for Sanctions, cannot serve as the basis for making such an award here.

Nor does the Protective Order itself provide a basis for imposing upon Plaintiff or Mr. Hess the costs and fees incurred by Defendant Busch in filing its Motion for Sanctions. Defendant Busch suggests that the last numbered paragraph of the Protective Order serves as an independent source of authority for the Court to impose sanctions for violations of the Protective Order. That paragraph reads, "It is expressly understood and agreed that any person who violates the terms and conditions of this Order consents to the jurisdiction of this Court and may be subject to sanctions in the event of unauthorized use." This paragraph simply enables the Court to exercise jurisdiction over anyone subject to the Protective Order, such as expert witnesses, for example, who may live outside the district, in the event that any such individual violates the terms of the protective order. Once such individuals become subject to the Court's jurisdiction, however, the Court may impose sanctions only pursuant to independent sources of authority to do so, such as the Court's inherent powers or the Federal Rules of Civil Procedure. As a result, the last paragraph of the Protective Order does not broaden the Court's powers in this regard.[4] Consequently, the Protective Order itself does not empower the Court to impose sanctions on Plaintiff or her counsel, in the absence of other authority to do so.

As neither the Court's inherent powers nor any Federal Rule of Civil Procedure or other

---

[4]Had the parties entered into their own agreement regarding the confidentiality of the materials protected by the Protective Order, the Court might well have been able to consider an award of costs and fees against Plaintiff and her counsel. *See Aleyska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 257 (1975) (exception to American Rule that each side pays for its own attorney's fees exists where parties enter into an enforceable contract providing for the payment of attorney's fees). Here, however, that did not occur.

source endows the Court with the ability to impose sanctions for the violation of a Rule 26(c) protective order in the absence of a finding of bad faith, the Court must deny Defendant Busch's Motion for Sanctions and Defendant Conservation Ambassadors, Inc.'s Joinder in that Motion. The parties are advised, however, that the Court regards Plaintiff's violations of the Protective Order very seriously. Should another violation of the Protective Order or other Court order occur in this case, the Court will have much more difficulty finding a lack of bad faith, in view of the history of this case and this particular opinion.

## CONCLUSION

For the foregoing reasons, Defendant Busch's Motion for Sanctions [D.E. 131], joined by Defendant Conservation Ambassadors, Inc. [D.E. 133], is hereby **DENIED.**

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 20th day of November, 2007.

ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc:   Honorable William P. Dimitrouleas
      Counsel of Record